Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9479 | **DATE** | 7/24/2003 |
| **CASE TITLE** | J.L. French Automotive vs. Factory Mutual Insurance | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the defendant's motion for summary (6-1) is granted in part; the Court rules in defendant's favor on the contamination issue. Plaintiff's motion for partial summary judgment (9-1) is denied. The case is set for a status hearing on 8/5/03 at 9:30 a.m. to discuss how to deal with any remaining issues in the case.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 2 5 2003 | |
| | Notified counsel by telephone. | date docketed | 21 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| | | U.S. DISTRICT COURT | date mailed notice |
| OR | courtroom deputy's initials | '03 JUL 25 PM 1:11 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| J.L. FRENCH AUTOMOTIVE CASTINGS, INC., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) Case No. 02 C 9479 <br> ) |
| FACTORY MUTUAL INSURANCE COMPANY, | ) <br> ) <br> ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff J.L. French Automotive Castings, Inc. filed this lawsuit against its insurer, Factory Mutual Insurance Company, in Illinois state court. Factory Mutual removed the action to federal court on the basis of diversity jurisdiction. J.L. French seeks a declaratory judgment that its insurance policy covers losses related to an accident at one of its plants and is suing Factory Mutual for breach of contract for refusing to indemnify J.L. French for those losses. The parties have filed cross motions for summary judgment. For the reasons stated below, the Court grants defendant's motion for summary judgment in part and denies plaintiff's motion.

## BACKGROUND

J.L. French manufactures automotive components for sale to car makers. On May 1, 2000, Factory Mutual issued J.L. French an insurance policy covering "all risks of physical loss or damage." On September 27, 2001, an operator of a press machine was fatally injured at plaintiff's Glasgow, Kentucky plant. At the Glasgow plant, J.L. French operates fourteen press

machines that die cast car parts. The lead operator of casting machine number nine was partially inside the machine performing an adjustment when another operator inadvertently activated it. The lead operator was fatally crushed in the press machine's die.

Following the accident, all presses were temporarily shut down, although production on presses eleven through fourteen was able to resume later that night. Presses one through ten, however, used die lubricant from the same tank as machine nine. As a result of the fatal accident, the die lubricant contained human remains. Machines one through ten thus had to remain down until the lubricant was neutralized, removed, the lubricant system cleaned, and the lubricant replaced. All presses except for machine nine were back in operation by September 30. Press nine remained down until October 3, when the cleaning process directed by OSHA was completed for the machine and die. As a result of the shut down, J.L. French claims to have incurred a loss of roughly $1.4 million stemming from clean-up costs and business interruption.

On October 4, 2001, J.L. French notified Factory Mutual of its loss. On December 10, Factory Mutual denied the claim. Although the policy contains a provision whereby Factory Mutual would indemnify J.L. French for financial losses resulting from "physical loss or damage of the type insured by this Policy," Policy at 29-30, Factory Mutual contends that the policy does not cover the loss in this case. Factory Mutual relies on a policy provision that excludes coverage for "contamination, including but not limited to the presence of pollution or hazardous material," unless "directly resulting from other physical damage not excluded by this Policy." Policy at 28. It contends that pursuant to this clause, the policy does not cover property damage that constitutes "contamination," and it maintains that contamination that is not itself the result of covered physical damage is likewise not covered under the policy.

## DISCUSSION

Factory Mutual moves for summary judgment on the basis that J.L. French's losses are excluded under the policy. J.L. French seeks summary judgment to the effect that coverage exists. Summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c). A court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

As an initial matter, the parties disagree as to which state's substantive law should govern the policy interpretation. Factory Mutual proposes Wisconsin, alleging that J.L. French's headquarters are located there. J.L. contends that choice of law analysis points to Kentucky, the location of the plant involved in the incident. Despite this dispute, choice of law does not effect the outcome of this case. General principles of insurance policy interpretation guide our resolution of the issues before us, and courts in both Wisconsin and Kentucky follow similar rules of interpretation. Words in insurance policies, if unambiguous, are given their plain and ordinary meaning. *Mullen v. Walczak*, 664 N.W.2d 76, 79 (Wis. 2003); *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999). An ambiguity exists when words are reasonably susceptible to more than one interpretation. *Frost ex rel. Anderson v. Whitbeck*, 257 Wis. 2d 80, 90, 654 N.W.2d 225, 230 (Wis. 2002); *see U.S. Fid. & Guar. Co. v. Preston*, 26 S.W.3d 145, 148-49 (Ky. 2000). Any ambiguity in a policy's language is to be construed against the insurer and in favor of coverage. *Anderson*, 257 Wis. 2d at 91, 654 N.W.2d at 230; *U.S. Fid. & Guar. Co.*, 26 S.W.3d at 149. Policy exclusions are to be narrowly construed to make insurance effective. *Kalchthaler v. Keller Const. Co.*, 224 Wis. 2d 387, 393, 591 N.W.2d 169, 172 (Wis.

Ct. App. 1999); *Transport Ins. Co v. Ford*, 886 S.W.2d 901, 904 (Ky. App. Ct.1994).

Moreover, Factory Mutual cites only one Wisconsin case, *Richland Valley Products v. St. Paul Fire & Casualty Co.*, 201 Wis. 2d 161, 548 N.W.2d 127 (Wis. Ct. App. 1996), that discusses a contamination exclusion in an insurance policy. The decision in that case, however, does not rely on established Wisconsin law; rather it relies on the principles noted above as well as cases from other jurisdictions. In a similar vein, J.L. French concedes that Kentucky case law provides no guidance that is factually on point, Pl.'s Resp. at 7 n.1, and it maintains that the Court should apply generally applicable principles of insurance policy interpretation. Pl.'s Mem. at 6.

The issues before the Court are, first, whether the presence of body parts in the die lubricant constitutes contamination, and second, if so, whether that contamination resulted from "other physical damage not excluded" by the policy. Guided by the above principles, we find that the term "contamination" is not ambiguous. Although various forms of matter can constitute contamination, the term is not itself reasonably susceptible to multiple meanings. Giving the word "contaminate" its plain and ordinary meaning, it means to "to render unfit for use by the introduction of unwholesome or undesirable elements." Webster's Third New International Dictionary 491 (1993). In turn, "contamination" means "the act or process of contaminating or the state of being contaminated" or "something that contaminates." *Id*; *cf. Richland Valley Products*, 201 Wis. 2d at 170-71, 548 N.W.2d at 131 (citing cases from various jurisdictions that rely on dictionary definitions of "contamination" to give the word its ordinary meaning in insurance policies).

The presence of human remains in the die lubricant plainly rendered it (and thus the

4

presses) unfit for their regular function and as such meets the ordinary definition of "contamination." The question then is whether this contamination was the result of "other physical damage not excluded" by the policy. J.L. French has provided no evidence that any actual physical damage to the press precipitated the contamination. Nor could it. The contamination – the presence of human remains in the die lubricant – was caused by the operator being crushed in the press. Even if there had been some physical damage to the press as a result of the accident, this damage would not itself have released human remains into the lubricant; it was the crushing that did so. The Court therefore determines that the presence of human remains constituted contamination that was not caused by "other physical damage." Any losses or costs incurred as a result of having to clean the lubrication system and replace the lubricant are therefore excluded from coverage under the policy.

Although Factory Mutual has moved for summary judgment on the basis that the contamination provision excludes J.L. French's claims, Def.'s Mem. at 3, it does not appear that we can dispose of the case entirely on this basis. A footnote in J.L. French's brief suggests an alternative basis for recovery under the policy: it intimates that machine number nine sustained actual physical damage during the incident. Pl'.s Mem. at 5 n.2. If this is the case, costs and losses resulting from the need to repair the press might not fall within the contamination exclusion. Factory Mutual appears to have conceded as much in a letter from its claims adjuster to J.L. French: the claims adjuster stated that "[w]e do find a possibility of coverage for the physical damage sustained by the die itself," and that "we are willing to concede that this physical damage [to the die] is potentially covered." Def.'s Ex. 9 at 4, 5.

The question that remains, then, is whether any of J.L. French's losses are attributable to

covered physical damage. Because the parties have devoted scant attention to this issue, the Court cannot at this time determine the propriety of summary judgment on this point.

## CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment [No. 6-1] is granted in part; the Court rules in defendant's favor on the contamination issue. Plaintiff's motion for partial summary judgment [No. 9-1] is denied. The case is set for a status hearing on August 5, 2003 at 9:30 a.m. to discuss how to deal with any remaining issues in the case.

MATTHEW F. KENNELLY
United States District Judge

Date: July 23, 2003