# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2 C 9479 | **DATE** | 12/20/2004 |
| **CASE TITLE** | J.L. French Automotive Castings, In vs. Factory Mutual Insurance Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the reasons stated above, the Court denies defendant's motion for summary judgment [29-1]. The case is set for a status hearing on 1/4/2005 @ 9:30 a.m. for the purpose of setting a date for trial of any remaining issues in the case.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC 21 2004 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 38 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| TSA | courtroom deputy's initials | FILED RECEIVED 04 DEC 21 AM 8:13 Date/time received in Central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| J.L. FRENCH AUTOMOTIVE CASTINGS, INC., ) ) ) Plaintiff, ) ) vs. ) ) FACTORY MUTUAL INSURANCE CO., ) ) Defendant. ) | Case No. 02 C 9479 |

DOCKETED
DEC 2 1 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

J.L. French manufactures automotive parts. In late September 2001, it had in production at its Glasgow, Kentucky plant fourteen press machines used to die cast parts. Pltf. LR 56.1 Resp. ¶ 7. On September 27, 2001, an employee was accidentally crushed and killed in press machine 9. *Id.* ¶ 8. Machine 9 contained die number 19 (the number was later changed to 24), which at the time was being used to produce a part called the 770 oil pan. *Id.* ¶¶ 9-12. As of that date, the 770 oil pan production program included seven dies, five of which were being used in production and two of which were undergoing standard maintenance. *Id.* ¶ 13.

The entire Glasgow plant was shut down for a short period following the accident. *Id.* ¶ 14. Machines 11 through 14 were put back into production in around two hours. *Id.* ¶ 16. Machines 1 through 10, which all used lubricant from the same common tank, were shut down for a longer period, due at least in part to the need to dispose of the lubricant, which had been contaminated with blood and bone particles, and to recharge the tank. *Id.* ¶¶ 17-18. These

machines were not available to resume production until the afternoon of Friday, September 28. *Id.* ¶ 19. Four of the machines were placed back in production that day using spray lubrication units, an alternate method of lubrication. *Id.* ¶ 22. All of the machines, except machine 9, were back in operation on Sunday, September 30 using the central lubrication system. *Id.* ¶¶ 21, 24.

The county coroner released the accident scene – machine 9 – around 12:00 p.m. on Saturday, September 29. *Id.* ¶ 20. J.L. French contends that absent the physical damage that the accident had caused to die 19, this machine would have been sent out for cleaning locally and would have been back in production in "hours, not days." *Id.* ¶¶ 20, 32. Die 19 was sent out of state to a company called Dieco for maintenance and, J.L. French says, repair of physical damage that J.L. French contends was caused by the accident. *Id.* ¶ 30. J.L. French has offered evidence that its personnel observed physical damage to the die on the morning of Friday, September 28. *Id.*

Dieco had possession of die 19 beginning on September 29. *Id.* ¶ 33. It cleaned the die on October 1, and between October 1 and 4, the die was disassembled for further cleaning and evaluation. *Id.* ¶¶ 34, 35. After dissassembly, the full extent of the physical damage became known. *Id.* ¶ 36. The die, renamed die 24, was returned to J.L. French on October 19. *Id.* ¶ 28.

Despite the fact that it did not have die 19 until October 19, J.L. French was back up to full production of the 770 oil pan by October 5. *Id.* ¶ 29. In this case, J.L. French claims damages resulting from lost production of the 770 oil pan. *Id.* ¶ 41. It claims that if die 19 had been available on and after September 29 at 1:00 p.m. – which J.L. French contends would have been the case absent the physical damage – it would have had sufficient production to avoid the losses it claims, because one of the hand spray lubrication units could have been used along with

2

this die. *Id.* ¶¶ 42-43, 23.

J.L. French had an insurance policy issued by Factory Mutual Insurance Company. J.L. French made a claim on the policy, but Factory Mutual declined coverage based on an exclusion for losses resulting from contamination. J.L. French filed suit in state court, and Factory Mutual removed the case to federal court based on diversity of citizenship. In an earlier ruling, the Court held that the presence of human remains constituted contamination under the insurance policy and that losses resulting from contamination were not covered. The Court therefore granted summary judgment to Factory Mutual to that extent. J.L. French had indicated, in a footnote in its brief, that it could recover for losses resulting from physical damage to die 19. Because the parties had not briefed that issue, the Court deferred it for later resolution. Following further discovery, Factory Mutual moved for summary judgment on the remainder of J.L. French's claim.

## Discussion

J.L. French's damage claim includes $506,560 in costs of expediting freight. It claims that to mitigate its losses, on September 28, it shipped one of the dies that was in maintenance to its Sheboygan, Wisconsin plant to make up some production. The oil pans made at Sheboygan were expedited to Glasgow so they could be machined and assembled and shipped to J.L. French's customer. Pltf. LR 56.1 Resp. ¶¶ 48-49. The damage claim also includes the costs of expediting freight from Glasgow to Sheboygan ($147,945); the expense of temporary and overtime labor ($380,220); and a "shutdown charge" imposed by J.L. French's customer, General Motors, due to delayed shipments ($132,500). All of these damages are claimed to fall within the "time element" coverage discussed below. J.L. French's damage claim also includes property

3

damage losses totaling around $117,000. *Id.* ¶ 54.

J.L. French argues that it is entitled to coverage for losses resulting from the physical damage to die #19 under the policy's "time element" provision, which states:

This policy insures TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured by this policy:

1) to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below;

2) used by the Insured, or for which the Insured has contracted use;

3) located at an Insured Location; and

4) during Periods of Liability described in this section.

Policy at 29. The "time element" provision covers lost income and expenses incurred due to interruption of production or operation. *Id.* at 29-30.

There is a particularized exclusion of coverage regarding time element loss, which states that

[t]his Policy does not insure against

Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

1) physical loss or damage not insured by this Policy on or off of the Insured Location.

2) planned or rescheduled shutdown.

3) strikes or other work stoppage.

4) any other reason other than physical loss or damage insured by this Policy.

*Id.* at 43.

4

J.L. French has provided evidence from which a fact finder reasonably could determine that absent the physical damage to die 19, the Glasgow plant would have been back at full production of the 770 oil pan by no later than September 29 or 30. Specifically, it has provided an affidavit from Daniel Iacconi, the Glasgow plant manager, to the effect that absent the physical damage, the die would have been cleaned locally, not sent to Dieco, and would have been back in production within hours after the coroner was finished examining the accident scene. Iacconi Aff. ¶ 9. This evidence would permit a finding that any time element losses that J.L. French suffered due to the production slowdown following September 29 or 30 was loss "directly resulting from physical loss or damage of the type insured by the policy" within the meaning of the time element coverage, *and* was not loss during an "idle period ... when production would not have taken place or would have been prevented due to ... [a] reason other than physical loss or damage insured by [the] Policy."

Such a finding would suffice to permit coverage even under the construction of the policy provisions that Factory Mutual urges in its motion for summary judgment. Specifically, Factory Mutual contends that the idle period provision requires the court "to hypothesize a situation in which no damage had been suffered by on-premises facilities. If, in that hypothetical situation, there is a period when (for reasons other than the on-premises damage) goods would not have been produced ..., then, as to that hypothetically 'idle' period there was no liability." Dfdt. Summ. Judg. Mem. at 7 (quoting *Manufacturers Mut. Fire Ins. Co. v. Royal Indemnity Co.*, 501 F.2d 299, 301 (9th Cir. 1974)). Under the scenario offered by J.L. French, had there been no physical damage, the only period during which goods would not have been produced or production would have been reduced was the period through September 29 or 30, not October 5.

It is conceivable that some of J.L. French's losses are attributable *entirely* to the period, through September 29 or 30, during which it appears to concede that full production was not possible due to the need to clean the machines and recharge the central lubrication system. Such losses are not covered under the "time element" provision, or alternatively would be excluded under the "idle period" exclusion. But the Court cannot sort that out on the present record, and determination will have to await trial.

### Conclusion

For the reasons stated above, the Court denies defendant's motion for summary judgment [docket # 29-1]. The case is set for a status hearing on January 4, 2005 at 9:30 a.m. for the purpose of setting a date for trial of any remaining issues in the case.

MATTHEW F. KENNELLY
United States District Judge

Date: December 20, 2004